Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5625 | **DATE** | 5/21/2003 |
| **CASE TITLE** | Stansberry vs. Uhlich Children's Home | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss is denied in part and granted in part. The March 18, 2003 Order to Stay Discovery is lifted. Written fact discovery must be issued by June 21, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 2 1 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 36 |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 MAY 21 AM 7:09 | MAY 2 1 2003 date mailed notice | |
| TH ✓ | courtroom deputy's initials | Date/time received in Central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MONTELL F. STANSBERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 C 5625 |
| v. ) | |
| ) | |
| UHLICH CHILDREN'S HOME and DARLENE ) | |
| Y. SOWELL, individually and as agent of ) | |
| UHLICH CHILDREN'S HOME, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, Judge:

After Uhlich Children's home terminated Montell Stansberry, he brought a five count complaint against Uhlich and Darlene Sowell, his former supervisor. Stansberry alleges that Defendants violated the Americans with Disabilities Act (the "ADA"), the Family Medical Leave Act (the "FMLA"), and the anti-retaliation provision of the Bankruptcy Code. Stansberry also claims that Defendants committed intentional infliction of emotional distress and retaliatory discharge. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendants' motion is denied in part and granted in part.

## ALLEGATIONS

DOCKETED
MAY 21 2003

### I. Stansberry's Employment And Injury

Beginning on March 21, 2000, Uhlich employed Stansberry as a child care worker at one of its group homes. (R. 27-1, Second Am. Compl. ¶¶ 1, 6, 11.) On October 27, a youth at one of Uhlich's facilities injured Stansberry. (*Id.* ¶ 12.) As a result, Stansberry aggravated and re-

injured multiple herniated disks in his neck. (*Id.*) He also sustained a contusion to his groin area, injured his shoulder and developed a contusion. (*Id.*)

On March 14, 2001, doctors performed surgery on Stansberry to treat his hernia injuries. (R. 27-1, Second Am. Compl. ¶ 15.) Two months later, he returned to work with some restrictions. (*Id.* ¶ 16.) Even with those restrictions, he was able to perform the essential functions of his job. (*Id.*) Defendants regarded him as having a disability that substantially limited his major life activities. (*Id.* ¶ 2.) Sowell, who was Uhlich's vice president of human resources, told Stansberry that he should start looking for another career because of this disability. (*Id.*)

## II. Stansberry Suffers Another Injury

On November 13, 2001, Stansberry was driving during the course and within the scope of his work when another vehicle rear-ended him. (R. 27-1, Second Am. Compl. ¶ 20.) This time, Stansberry sustained additional injuries to his neck. (*Id.*) On December 4, 2001, Stansberry's physician prepared a report that stated that Stansberry should remain off work until his next doctor's appointment. (*Id.* ¶ 23.) He diagnosed Stansberry with cervical radiculopathy and cervical fusion. (*Id.* ¶ 36.) Based on that diagnosis, Stansberry scheduled physical therapy and further medical treatment. (*Id.* ¶ 37.)

Later that day, after receiving the physician's report, Defendants told Stansberry that Uhlich would terminate him if he did not return to work in nine days. (*Id.* ¶ 24.) Defendants told Stansberry that Uhlich's physician had determined that he was fit for duty. (*Id.*) According to Defendants, Uhlich's physician's opinion was final and not subject to independent review. (*Id.*) Defendants also informed Stansberry that he could not schedule any additional future medical

2

appointments during work hours. (*Id.* ¶ 26.) Stansberry returned to work on December 10, 2001. (R. 27-1, Second Am. Compl. ¶ 26.)

### III. Stansberry's Bankruptcy

Stansberry filed for Chapter 13 bankruptcy protection on July 23, 2001. (R. 27-1, Second Am. Compl. ¶ 49.) Uhlich granted Stansberry permission to attend a bankruptcy court hearing on December 13, 2001. (*Id.* ¶ 50.) On December 10, 2001, Stansberry reminded his employer of the hearing date. (*Id.* ¶ 26.)

### IV. Termination

Uhlich terminated Stansberry in a letter that he received on December 14, 2001. (R. 27-1, Second Am. Compl. ¶ 27.) Uhlich's stated reason for termination was that he left work without permission the previous day. (*Id.*) Stansberry filed a charge of discrimination against Uhlich on July 10, 2002. (R. 27-1, Second Am. Compl. ¶ 33.) He received a right to sue letter on July 19, 2002. (*Id.*)

## STANDARDS

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint; it is not designed to resolve the case on the merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When determining whether to grant this type of motion, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences on plaintiff's behalf. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997). The Court should not dismiss a complaint even if it "appear[s] on the face of the pleadings that a recovery is very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Instead, dismissal is appropriate only if "it is clear that no relief could be granted under

3

any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A plaintiff cannot satisfy federal pleading requirements, however, merely by attaching bare legal conclusions to narrated facts that fail to outline the basis of his claims. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

## ANALYSIS

### I. Plaintiff Has Provided Defendant With Notice Of His Claims

Most of Defendants' arguments are easily disposed of, because they seek to hold Plaintiff's complaint to a higher standard than is required under notice pleading. The Federal Rules of Civil Procedure establish a notice pleading system, where a plaintiff is only required to set out in his complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999).

In many of Defendants' attacks on the sufficiency of the complaint, they argue that Plaintiff has not pled the necessary elements of a *prima facie* case. The allegations of a *prima facie* case are not necessary, however, to put Defendant on notice of Plaintiff's claims and satisfy Rule 8. Instead, a Plaintiff seeking to recover for a statutory breach only needs to "outline or adumbrate" a violation of the statute and connect the violation to the named defendants.[1] *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 792 (7th Cir. 1996); *see also Scialabba v.*

---

[1] This is true even for Plaintiff's state law claims. While a plaintiff in state court might be required to allege all of the facts essential to recovery under his chosen legal theory, a plaintiff bringing the same claim in federal court needs only to satisfy the notice pleading standard. *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997).

4

*Sierra Blanca Condo. No. One Ass'n*, No. 00 C 5344, 2000 WL 1889664, at *3 (N.D. Ill. Dec. 27, 2000) (a plaintiff seeking to recover because of a statutory violation "need only plead the statutory elements of the claims, not the structure of a *prima facie* case under the claim.") (citation omitted).

There can be no genuine dispute as to whether Plaintiff's complaint satisfies notice pleading. Defendants clearly understand the basis of Plaintiff's claims. In this light, the Court will only address Defendants' arguments that relate to the substance of Plaintiff's complaint, rather than whether it alleged a *prima facie* case.

## II. Despite His Bankruptcy Filing, Stansberry Has Standing To Bring Suit

Defendants claim that Plaintiff does not have standing to bring suit because he filed for Chapter 13 bankruptcy protection. In support of this argument, Defendants cite to a Seventh Circuit case, *Matter of New Era, Inc.*, 135 F.3d 1206 (7th Cir. 1998), which relates to a Chapter 7 bankruptcy and an Eastern District of Missouri case, *Richardson v. United Parcel Service*, 195 B.R. 737 (E.D. Mo. 1996), which contains reasoning that has been rejected or questioned by several other federal courts. *See Donato v. Metropolitan Life Ins. Co.*, 230 B.R. 418, 425-26 (N.D. Cal. 1999) (finding the reasoning of courts holding that Chapter 13 debtors-in-possession do have standing to bring suit to be more persuasive); *In re Bowker*, 245 B.R. 192, 198-99 (Bankr. D.N.J. 2000) (holding that debtor and trustee have concurrent standing); *In re Griner*, 240 B.R. 432, 435 n.1 (Bankr. S.D. Ala.1999) (calling *Richardson* decision a "mistake" because it cited to Chapter 7 case law). Defendants fail, however, to cite to binding Seventh Circuit precedent that completely rejects every aspect of their position.

Specifically, in *Cable v. Ivy Tech State College*, 200 F.3d 467, 472-74 (7th Cir. 1999), the

5

Seventh Circuit held that a Chapter 13 debtor-in-possession can bring a claim in his own name on behalf of the bankruptcy estate. The court completely refuted Defendants' reliance on *Richardson* and Chapter 7 case law. The Seventh Circuit noted that two other federal appellate court opinions – which Defendants also failed to reference – are in accord with this principle. *Id.* at 473 (citing *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2d Cir. 1998); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1209 n.2 (3d Cir. 1992)).[2] Clear controlling precedent shows that Plaintiff has standing to bring these claims. This is especially true here, where the Trustee has given permission for Plaintiff to bring this lawsuit and has only reserved its right to approve any proposed settlement.

### III. Stansberry Has Sufficiently Pled An ADA Claim, But He Has Not Exhausted His Administrative Remedies With Respect To His Demotion And Failure to Accommodate Claims

Defendants provide three attacks to Stansberry's ADA claim in Count I. First, they claim that he failed to exhaust his administrative remedies with respect to his allegations that Uhlich engaged in discrimination by demoting him and failing to accommodate his disability. Second, Defendants maintain that Stansberry cannot allege that he had a disability. Third, Defendants claim that Stansberry cannot seek more than $300,000 in damages.

---

[2] According to Rule 11, an attorney or unrepresented party certifies in his or her submissions:

> that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Fed. R. Civ. P. 11(b)(2). Because of this Rule, the failure to cite to controlling precedent is sanctionable. *See, e.g., Newsome v. James*, 968 F.Supp. 1318, 1323 (N.D. Ill. 1997).

### A. Stansberry's Demotion And Failure To Accommodate Claims Are Outside The Scope Of His Charge

As a general rule, a plaintiff suing under Title VII cannot bring claims in a lawsuit that were not included in his E.E.O.C. charge. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Id.* Because most E.E.O.C. charges are filled out by laypersons, rather than by attorneys, a Title VII plaintiff need not allege in the E.E.O.C. filing "each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). The test for determining whether a plaintiff's claims are within the scope of his E.E.O.C. charge is: (1) whether there is a reasonable relationship between the allegations in the charge and those in the complaint and (2) whether the claim in the complaint can reasonably be expected to grow out of an E.E.O.C. investigation of the allegations in the charge. *Id.*

Stansberry's demotion and failure to accommodate claims are outside of the scope of his charge based on this test as a matter of law. His E.E.O.C. charge only discusses the day of his termination and the reason for his discharge. Stansberry only describes in his charge how he can establish the elements of a *prima facie* case of termination on the basis of his disability. It is clear from the E.E.O.C. charge that Stansberry was limiting his allegation to the issue of his termination. There is no reasonable relationship between Stansberry's E.E.O.C. charge and his claims in his complaint that Uhlich's failed to accommodate his disability or inappropriately demoted him. The E.E.O.C. charge shows that Stansberry failed to exhaust his administrative remedies in relation to these two claims. Accordingly, Stansberry's ADA claim in Count I is

limited to the issue of his termination.

### B. Plaintiff Has Adequately Alleged That He Has A "Disability"

Defendants argue that Plaintiff's ADA claims fail because he cannot meet the statutory definition of "disability." For purposes of the ADA, a "disability" is defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Defendants claim that because of this definition, Stansberry must allege that he suffers from a specific impairment that substantially limits a specific major life activity or is so regarded. Courts in this District have found, however, that a plaintiff may adequately state an ADA claim by pleading the factual conclusion of his or her disability. *See Plohocki v. Chicago Sch. Reform Bd. of Trs.*, No. No. 99 C 6710, 2000 WL 150748, at *2 (N.D. Ill. Feb. 4, 2000); *McKay v. Town & Country Cadillac, Inc.*, 991 F.Supp. 966, 970 (N.D. Ill. 1997). Stansberry has alleged that he suffers from a disability under the ADA due to his neck injuries. This allegation is sufficient to allow his ADA claim to proceed.

Defendants next argue that Stansberry has pled himself out of court by alleging that his condition was temporary. Defendants maintain that Stansberry admitted his condition was not permanent and therefore he is not disabled. Defendants point out that Plaintiff's first amended complaint stated that because of his injuries he "was to remain off of work for one month" and that his second amended complaint deleted this allegation, instead claiming that he "needed more time to recover from his injuries and to attend physical therapy." These allegations are not so

contrary to an ADA claim as to plead Plaintiff out of court because Plaintiff has not alleged that his purported disability would have been cured during this time. Providing Plaintiff with all reasonable inferences, it is possible that rehabilitation would have allowed him to go back to work, but that he would still have been disabled upon returning. In fact, a plaintiff bringing a successful ADA claim must show that he or she can go back to work and perform the essential functions of the job with or without accommodation. It follows that Stansberry has not pled himself out of court by alleging that he would have been able to return to work after sufficiently recovering from his injuries (but perhaps remaining disabled) through time and rehabilitation.

### C. The Court Will Not Strike Plaintiff's ADA Prayer For Relief

Defendants ask this Court to dismiss Stansberry's requests for relief in excess of $300,000 for disability discrimination. Defendants claim that the cap against it for compensatory and punitive damages is $300,000 under the ADA. The Court views this as a motion to strike, since it will not cause the dismissal of the Complaint or a claim.

Defendants' position is meritless even as a motion to strike, however, because the ADA's $300,000 cap does not include a claim for the equitable relief of back pay, front pay, lost future earnings and reinstatement. *See Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 499-500 (7th Cir. 2000). Accordingly, there is no cause to strike Stansberry's prayer for relief.

### IV. Stansberry's FMLA Claim Is Adequate

Defendants seek to have this Court dismiss Plaintiff's FMLA claim in Count II because he purportedly exceeded the number of entitled absences under the FMLA. The FMLA affords flexibility in employment for medical or family emergencies for eligible employees. *See Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998). In enacting the FMLA, "Congress

9

sought to mandate a flexible leave allotment for medical and family reasons for all men and women working at least 1250 hours a year at firms employing 50 or more employees during at least 20 weeks of the year." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1023 (7th Cir. 1997). An eligible employee may take unpaid leave for up to twelve weeks in any twelve month period following certain events: a disabling health problem; a family member's serious illness; or the arrival of a new child. 29 U.S.C. § 2612(a)(1).

Defendants claim that Plaintiff pleaded himself out of court on his FMLA claim because he alleged that he was absent from work for more than twelve weeks when he was injured from October 27, 2000 to May 15, 2001. Defendants point to a recent Supreme Court case, *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002), in support of their argument. Defendants claim that the Supreme Court held in *Ragsdale* that the FMLA guarantees employees up to 12 weeks of leave and no more. Defendants misread *Ragsdale*. In that case, the Supreme Court merely struck down a regulation that it found to be contrary to the FMLA. That regulation stated that if an employer did not notify an employee that it was designating his or her absences as FMLA leave, the absences would not count against an employee's FMLA entitlement. The Supreme Court found instead that judges and juries should make a fact-specific inquiry into the damage that an employee suffered because he or she did not receive an FMLA designation notice. *Id.* at __, 122 S.Ct. at 1162. Defendants argument is therefore doomed because "a fact-based inquiry and determination is not generally motion to dismiss territory." *Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 962 (7th Cir. 1996). Dismissal is particularly inappropriate here, since it is not clear from the complaint whether Uhlich designated any part of Stansberry's previous absences as FMLA leave or provided him

with notice of that designation.

Further, it is clear that Uhlich could not classify a vast majority of Stansberry's absences from October 27, 2000 to May 15, 2001 as his FMLA leave. Uhlich only began employing Stansberry on March 21, 2000. (R. 27-1, Second Am. Compl. ¶ 11.) The earliest Stansberry would have been eligible for his FMLA entitlement was a year later, on March 21, 2001. 29 U.S.C. § 2611(2)(A). If he did become eligible on that date, he would have only used approximately eight of his twelve weeks allowed under the FMLA. Therefore, he would not have exhausted his FMLA leave when he suffered his subsequent injuries.

Defendants next argue that Stansberry's FMLA claim should be dismissed because he did not allege that a physician made any determination that he suffered from a "serious health condition" under 29 U.S.C. § 2613(b). That section, however, only requires an employee to submit certification of his or her condition to the extent that the employer requires it. 29 U.S.C. § 2613(a). At this early stage, there is nothing before the Court as to whether Uhlich required certification of the serious health condition. Moreover, Stansberry did allege that his physician provided Uhlich with a diagnosis of his neck injuries. Providing him with reasonable inferences, Stansberry has successfully alleged an FMLA violation.

### V. Stansberry's Intentional Infliction of Emotional Distress Claim Is Barred By The Exclusivity Provision of the Illinois Human Rights Act

Defendants maintain that Stansberry cannot maintain his intentional infliction of emotional distress claim in Count IV because it: (1) is preempted by the Illinois Human Rights Act (the "IHRA"), (2) insufficiently alleges extreme and outrageous conduct, and (3) is barred by the Illinois Workers Compensation Act. Because Defendants are correct in their first two

11

arguments, the Court does not need to address their last contention.

The IHRA prohibits employment discrimination based upon an employee's handicap. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) (citing 775 ILCS 5/1-101, *et seq.*). It preempts all state law claims that seek "redress for a 'civil rights violation' within the meaning" of the IHRA. *Geise v. Phoenix Co. of Chicago, Inc.*, 639 N.E.2d 1273, 1276 (Ill. 1994). In order to plead a claim for intentional infliction of emotional distress in the employment context that is not preempted by the IHRA, a plaintiff must allege conduct that is "actionable even aside from its character as a civil rights violation." *Krocka*, 203 F.3d at 516. In other words, if the IHRA does not "furnish[ ] the legal duty that the defendant was alleged to have breached," there is no preemption. *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997).

Plaintiff bases his intentional infliction of emotional distress claims on paragraphs 1-28 and 43-47 in his complaint. The last few paragraphs are merely conclusory allegations that plead the elements of intentional infliction of emotional distress under Illinois law. The other paragraphs solely allege conduct that is inextricably linked with Plaintiff's discrimination, retaliation and FMLA claims. Stansberry's intentional infliction of emotional distress claim is therefore preempted by the IHRA. *See Harrington-Grant v. Loomis, Fargo & Co.*, No. 01 C 6344, 2002 WL 47152, at *5 (N.D. Ill. Jan 11, 2002) (emotional distress claims barred by the IHRA where they were inextricably linked to her Title VII and FMLA claims).

Further, even if these claims were not barred by the IHRA, Plaintiff still has not pled a cause of action for intentional infliction of emotional distress because he has not alleged extreme and outrageous conduct. *See Haas v. Village of Hinsdale*, No. 01 C 1278, 2001 WL 1609367, at *3 (N.D. Ill. Dec. 17, 2001) (claim for emotional distress based on employment discrimination

fell "far short" of being extreme and outrageous); *Schwartz v. Home Depot U.S.A., Inc.*, No. 00 C 5282, at *5 (N.D. Ill. Dec. 4, 2000) (pattern of discrimination, failure to promote and retaliation fell within the "unavoidable aspects of employment relationship" that does not constitute extreme and outrageous conduct) (citing *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997)); *Welsh v. Commonwealth Edison Co.*, 306 Ill.App.3d 148, 153 (Ill. App. 1999) (retaliation that was humiliating, demeaning, harassing, and intimidating was not outrageous conduct). Accordingly, the Court dismisses Count IV.

## VI. Plaintiff Has Sufficiently Alleged A Violation Of The Anti-Retaliation Provision Of The Bankruptcy Code

In Count V, Stansberry claims that Uhlich violated the anti-retaliation provision of the Bankruptcy Code, 11 U.S.C. § 525(b), by terminating him solely because he was a debtor under the Bankruptcy Act. (R. 27-1, Compl. ¶ 49.) Uhlich contends that this claim should be dismissed because Stansberry also alleges that Uhlrich had other motives for terminating him, including disability discrimination and retaliation. A plaintiff, however, may plead in the alternative. *See* Fed. R. Civ. P. 8(e)(2); *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 119 (7th Cir. 1995). Here, Stansberry specifically set forth that he was "**pleading in the alternative**." (*See* R. 27-1, Compl. ¶ 48 (bold and underline in original).) He can therefore maintain his claim under Section 525(b).

Defendants raise one final attack on Stansberry's complaint. They claim that punitive damages are not available under Section 525(b). In support of this argument, Defendants cite to *Lear v. Warnaco, Inc.*, 251 B.R. 656 (S.D.N.Y. 2000), which appears to be the only case that has confronted the issue. In the case, the court found that an award of punitive damages and

13

attorneys fees is not appropriate under Section 525(b), absent explicit authority from Congress. *Id* at 659. In response, Plaintiff does not provide a reason for distinguishing, discrediting, or discounting *Lear*. Plaintiff, in fact, makes no argument to support a finding that punitive damages are available under Section 525(b). Without developing his position, Stansberry has waived his right to punitive damages. *See, e.g., Palmquist v. Selvik*, 111 F.3d 1332, 1342 (7th Cir. 1997) ("Even an issue expressly presented for resolution is waived if not developed.").

## CONCLUSION

Defendants' motion to dismiss is denied in part and granted in part. Accordingly, the Court lifts the March 18, 2003 Order to Stay Discovery (R. 34-1).

Dated: May 21, 2003

AMY J. ST. EVE
United States District Court Judge